Could the clerk call the next case, please? 3-13-0132, 1st Merit Bank, N.A. v. Yunker, et al., Appellant Gerald Schrammich Mr. Schrammich, good morning. Good morning, Your Honors. Gerald Schrammich on behalf of Catherine Yunker, Appellant. May it please the Court, Counsel. There are two principal issues in this case. The first concerns the foundational requirements for the admission of business records. Simply put, if Company A acquires Company B, can the custodian of the records of Company A establish a proper foundation for the records of Company B without having any knowledge or familiarity with the record-keeping practices of Company B? Prior to any acquisition, I think we all would agree that the custodian of the records of Company A, who is a stranger to the record-keeping practices of Company B, would be incompetent to lay a foundation for the company records of Company B. The question then becomes, if on the next day Company A now acquires Company B, does Supreme Court Rule 236 now somehow magically endow the custodian of Company A to competently lay a foundation for the records of Company B? I say no. My opponent says yes. In discussing this issue, I think it's important that we draw a distinction between individual records created by third parties that are part and parcel of the record-keeping process of a company and a wholesale and massive acquisition of the records of one company to another. The first instance is in the regular course of business, as we normally understand that term. Business records are created by third parties all the time. They're part and parcel of the record-keeping process of that company. However, the second is not a regular course of business. It's an extraordinary occurrence, one which the record-keeping systems are different. There's no knowledge. It is a different type of situation entirely. And I think that distinction is set forth fairly clearly in Supreme Court Rule 236. The portion of 236 that counsel relies upon and that is cited in some of the cases says, all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. That sentence, however, comes after and is conditioned upon the statement, if made in the regular course of business and if it was the regular course of business, to make such a memorandum or record. So in short, third-party created records that are kept in the ordinary course of business are admissible, but only after a proper foundation is laid for the record-keeping practices of the company. So you're saying there should have been someone from George Washington Bank there? That's one possibility, but it's not limited to that possibility. It could have been a third-party contract entity that prepared the records for George Washington Bank. Absolutely. Or had knowledge of their system. I don't think it's constricted to an employee, but obviously someone who can satisfy the requirements of 236. The corollary of 236 is Elementary Rules of Evidence 803. It requires the testimony that documents sought to be admitted were, one, made at or near the time of the event, two, by or from information transmitted by a person with knowledge, three, was kept in the course of a regularly conducted business activity, and four, that it was the regular practice of the business activity to make such a document, all shown by the testimony of the custodian or other qualified witness. And as stated in the Liner case, a qualified witness is one who can explain the record-keeping system of the organization and vouch that the requirements of Rule 803.6 are met. I think applying these foundational requirements to the example that I previously gave, it's submitted that the custodian of Company A is incompetent to lay a proper foundation for the records of Company B, just by mere fact of the acquisition. It would be hard-pressed for anyone to understand how on day one, a person is incompetent to lay a foundation, next day there's an acquisition, and all of a sudden he's competent. I don't think that the rule calls for that. The sentence that, again, is relied upon about third-party created documents are limited to those that are ordinarily kept in the regular course of business. Well, if I'm, on day one, if I'm walking down the street unemployed, and that evening I get hired by a bank to be their records keeper, and I walk in and they say, Dan, here's where we keep all of our mortgage documents. They've been kept in the ordinary course, but this is where we keep them. And if you need one, go there and get them, because that's where they are. And so the next day, I'm now a records keeper. Why? And I get called into court. If I was incompetent on day one and on day two, wouldn't I be competent? Perhaps. But then you were at least given some direction and instruction as to the methodology. You couldn't just say the records are over here, because you do have to go into the methodology of keeping them, the retention of them. You have to have some testimony that indicates, because don't forget, we're flying in the face of hearsay here. We're allowing third-party created documents into evidence. And in order to do that, historically and under the rules, we have to indicate, have some foundation of the reliability and trustworthiness. And if the testimony can establish that, then that's fine. But it has to indicate that there is a practice, that there is some reliability to the methodology of it, because without the foundation, then you're going to have an evidentiary free-for-all. It's a business record. Throw it in. Let somebody else worry about it. But then, in a scenario I just gave you, now you cross-examine me out there, and you say, wait a minute, what are your rule-only disabilities? Whose signature is that on there? I say, I don't know. Whose signature is that? I don't know. Where's this property located? I don't know. How did it get in that cabinet? I don't know. I just went and got there. Does the record come in? Maybe not, based upon the limited statements that you had, because based upon that, I don't know that there is any reliability or trustworthiness of the record, because there would have to be these documents. I don't know who the signature is, but we get these because they are important to our loan analysis. And when we receive them, we place them in this type of place. Once you do that, then the fact that you don't know the signature doesn't really matter. I mean, it may matter on the weight of the evidence, but not on the admissibility. But that's a very different situation from our company A and B. What you're saying is the ordinary course of business can only be known by someone who's affiliated, associated with that other company, correct? Someone who's familiar with their practices. Well, okay, in this case, specifically George Washington. Yes. Yeah, because the record-keeping system is entirely different. I mean, they may have gone under because they were bad record-keepers, I don't know. But obviously there has to be some foundational requirements. Well, common sense is that only George Washington's people would know that, or people affiliated with George Washington in their business. Right. Affiliated, yes. I just would not want to limit it to... Well, I'm still giving you your third-party affiliation, yes. But, I mean, how would the successor bank know that? Well, there are ways because, number one, when they do the acquisition, it would seem to me that they would have somebody who would go in and become familiar with the system in order to assimilate. Well, now you're starting to qualify a successor bank person to come in. You could. Why not? Well, I'm not saying you can't, but I'm talking about this case. Right. I mean, but in this case, none of the affidavits go to that. Right. I mean, that's the problem. If they did, then we'd have a whole different story. At this point, there is a much stronger argument. Oh, yeah. Right. There is no argument. But lawyers always have arguments. Yeah, it's a curse of being long-winded, I guess. But, again, I think that's my position on it, that the affidavits here certainly did not comply with the foundational requirements. And, again, you know, in the below and in the briefs here, they keep on trying to attribute to my argument something that I never said, and that is we all know that individual records, even groups of records, can be third-party created, and you don't need any foundation. But you do need them to be in the regular course of that business. And I think, again, the affidavits of First Merit failed because of Wagner. Second issue in this case deals with the alternative counter-affidavit of Catherine Juncker. Normally, it has always been my experience that when you file a motion to strike a pleading, and if it's denied, you're given the opportunity to respond in a factual way to the pleading. In this case, we had actually three hearings on the motion to strike. And in the first hearing, you know, counsel had raised the argument, well, it's just a motion to strike. It's not a response. And Judge Siegel seemed receptive to that argument. So instead of waiting until my motion was denied, if in fact that was going to be the case in filing a response to pleading, when we were given leave to file a response to the affidavit of Michael Hayes, I filed a motion to strike based upon the same things we've just been talking about, and also a factual response by Catherine Juncker, an affidavit that indicated the amounts owed were incorrect because of certain forgeries of her name. That's a little bit more important here because this was not your traditional first mortgage loan. This was a construction loan, so there were numerous payouts over a long period of time, and all of this occurred during the tenure of George Washington, none of it during the tenure of the first American. So when the court denied the motion to strike, it also denied consideration of the counteraffidavit of Catherine Juncker based upon two things. Number one, it said it was an affirmative defense and not pleaded as such. And then number two, that it was untimely. And with respect to the affirmative defense argument, the statute, and always my understanding has been an affirmative defense, basically admits the allegations of the complaint, but says there's something more here that gives me a defense, a theater release, a statute of limitations, something else. But you're basically acknowledging the underlying facts and the cause of action. This case, Catherine Juncker's case was not an affirmative defense as I understand it because she acknowledged signing the note in mortgage, but she said there were disbursements made that were not authorized by me. So it's not a true affirmative defense. It is a defense. It was one that was clearly set forth in our amended answer. And our amended answer came as a result of discovery of documents. So it was not something that took anybody by surprise. It was filed in accordance with the order that said I could respond to the affidavit of Michael Hayes. The counter affidavit, it was an alternative response, but it is a response nonetheless. And in the overall scheme of things, when we grant a motion for summary judgment, I think as judges and lawyers, we want that to be a slam dunk situation. Summary judgment's a drastic remedy. Ought not to be granted unless it's very clear. So here we had a counter affidavit following what was set forth in our amended answer, filed in response to an affidavit, and the court didn't consider it. And it is my position that that was an abuse of discretion and improper. Thank you very much. Thank you, Mr. Schramet. Ms. Barron. Good morning. Good morning. My name is Gerilyn Barron. I'm here on behalf of First Merit Bank. I obviously am the appellee, and I'm asking this court to affirm the trial court's granting of the motion for summary judgment. In our view, there are two issues on appeal. Both of them are to be decided under the abuse of discretion standard. I'm sort of restating the way they were put into the briefs, but what I'm saying is that the first question is whether the trial court erred in determining that the banking records that First Merit relied upon in the Salmon's affidavit and in the Hayes affidavit were actually First Merit's business records under Supreme Court Rule 236 and under Illinois Rule of Evidence 8036. And the second issue that we'll be discussing and which we started discussing was whether the trial court erred when finding that Ms. Yonker had waived her failed banking practices forgery arguments by not asserting them in an affirmative defense or a counterclaim or a cross-claim, really failed to assert them at all, simply put them into an affidavit and suggested that that was sufficient. The trial court, in its discretion, determined that it had control over its docket, wanted to see that actual factual pleadings were presented before it, and determined that these defenses, failed banking practices or forgery, were waived. And therefore, we're not going to be considered in determining whether there was a disputed question in deciding the motion for summary judgment relative to the deficiency on the promissory note that Ms. Yonker admitted having signed and admitted having not paid when it matured. Yes? You may want to deal with the first one, but on that second issue, let me just ask you that generally, had this case gone to trial, one can amend the pleadings to conform to the evidence even after the trial's over, can't you? I mean, had it gone to trial. Certainly true. So it just seems a little bit strange, I guess, that even at the summary judgment stage, that if you come up with new evidence that you can't... Well, let's think about how... You probably know where I was going. I was in slow-mo this morning. That's all right, Aaron. I apologize for interrupting. As you know, the complaint was filed in September of 2010, and the first answer where everything was admitted was filed in July of 2011. There was a short sale, there was a deficiency. At that point after the short sale, the bank moved for summary judgment on the deficiency on the promissory note and used the answer that had originally been filed to show that there was no question. She admitted that she signed the note, she admitted that she didn't pay it when it was due, and there was nothing further. On the eve of the presentation of the motion for summary judgment, Mrs. Juncker filed a motion asking for leave to amend her complaint. She didn't ask to file an affirmative defense raising the fact that there were, in quotes, you know, banking deficiencies, that there wasn't someone there notarizing her signature, or that that was not, in fact, her signature. She didn't raise any of those affirmative defenses. She certainly had the opportunity. She filed a motion asking for leave. We did fight that issue. But the court ultimately, in its discretion, determined that that answer that she asked to file would be filed. And that answer did not raise any affirmative defenses. It had in the denial section a suggestion that some of the disbursements were not based upon her signature. It was not factually pleaded. There was absolutely no statement of how this happened. And in fact, if you look at the affidavit that she did file ultimately, it says, upon information and belief, there may be more reasons why these disbursements were not properly granted. That, obviously, is insufficient under Burke's drywall, the second district in 1982. It clearly says you can't rely upon that. Denials alone in an answer are insufficient as well. She had the opportunity to raise an affirmative defense, and she chose not to. And actually, it's a very recent case from the Fifth Circuit, Bank of America v. Lance, which talks about when you can and cannot make amendments on this. And that case is factually similar to this one, and that's why we presented it to this court. You mean in the fifth district? In the fifth district. Okay, you said circuit. Oh, I'm so sorry. I apologize. I'm getting confused. But in that case, the court said that the court has the discretion to modulate its own docket. It's not an abuse of discretion to determine not to allow that type of amendment. And so I would argue that on this issue, these statements that she made in her counter affidavit did not create a genuine issue because this issue was not even added. These defenses of improper banking practices or forgery were not at issue in the case. So I would say that the court properly exercised its discretion in determining not to consider an unplaid affirmative defense in response to the motion for summary judgment. Now let's talk about the issue of the banking records. I have to admire Ms. Yonker and her argument because she really has a firm sense of incongruity when she suggests that when a bank buys another bank's records, they don't somehow become that bank's records. But in fact, if you look at the affidavits that were submitted, Mr. Hayes in particular, at paragraph 8 of his affidavit suggests that he reviewed all of those records, that they were then incorporated into First Merit's banking records, became part of its computer programming, and those were the records that were reviewed when determining whether there was a deficiency in the amount of the deficiency. But logically, he reviewed them, which means he took records he didn't know how they came about or how they were kept, and then just took them whole hog into their system, right? Let's talk about the City of Chicago v. Old Colony case. In that situation where the admission of similar third-party type records was regarded, the witness there said, I don't know how this was prepared. I have no idea how the investigator of the building actually prepared these records. I don't know what information was used. But we incorporated that, included it within our own records, and we relied upon it. It's going to come in, but it's not going to have a lot of weight. But that determination, just because something gets admitted as a business record doesn't give it any more weight than any other type of evidence. The trial court then has to evaluate that evidence and to make a determination whether or not it is good evidence or bad evidence. This documentation that was provided to First Merit Bank so that it could then proceed on the foreclosure and then on the breach of the promissory note was reviewed and evaluated by First Merit Bank. They prepared a buyer's account profile. They drew from that buyer's account profile to determine what the deficiency was, and that became part of Ms. Salmon's affidavit. And then later was supplemented by Mr. Hayes, who talked about the due process, the due diligence that he went through in evaluating the records, what he did when he went to look at the records that they purchased from the FDIC, from George Washington Savings Bank. So there are plenty of cases where the business records of third parties are incorporated and relied upon by a business, and they are offered as business records. And there's no question as to that. I don't think it makes a difference whether this is a large amount of records or a small amount of records. But if it makes a difference, if it's a large amount of records or a small amount of records, I urge this court to consider some of the federal cases that were cited as some type of precedent and guidance here. In the situation involving Saks, Saks International is a case from the Second Circuit, not District Circuit. They were looking at loading tallies that were prepared by a shipping company, and they were relied upon by the people that purchased these 19,000 pounds of coffee beans. This is not one document or a few documents. This is 19,000 pounds of coffee through loading tallies. So does it matter how many we're talking about? Is it one? Is it two? Let's talk about the Parker case from the Eleventh Circuit. In that, the manufacturer's certificate on stolen cars was relying upon other things that came from a manufacturer, but it was presented by the auto dealer to show that these were the cars that were stolen. That was five different cars. We have another situation involving Scotch. That's always fun. It was the manufacturer's certificate offered by the distributor of some Dewar Scotch for some hundreds of stolen cases of Scotch that were being used, and that was offered as evidence. So it's not just one thing or two things that we're talking about. We're talking about lots of records. And so I don't think the number is the critical fact. What's important and what's critical here is whether those documents were incorporated into the records of the business that's offering them and whether they were relied upon. And does that person offering that have the foundational elements to support that? And what we have here is Mr. Hayes and Ms. Sammons both saying, this is where we drew this information. We regarded it as trustworthy and reliable. It was contained within these computerized records because it was part of our ordinary practice, and it was admissible. And let's be mindful here that it's the trial court that makes that decision. It's abuse of discretion. And so when the court is considering this, you have to wonder whether a reasonable man would fight against the trial court. It's an abuse of discretion standard. There were some cases, but we're not walking into this without any precedent at all. There are other cases involving predecessor and successor bank records. And you don't have to create this all anew, although there is no decision here in the third district. There is no decision here, particularly on this point in the third district. But there are plenty of cases, including cases out of the northern district, that are interpreting similar language. For instance, it is not, but it's certainly something that you can utilize yourself in trying to decide what you want to do. Judge Dow, in the Crossick versus Centurion case, this is from 2009, can't read through these glasses, he relied upon a Massachusetts case, Beale Bank versus Erich. And in that case, there was a long discussion about reliability and trustworthiness and the rule of incorporation. And so I urge this court to consider what's been decided in other courts and evaluate that in determining whether or not this trial court abused its discretion in determining that an appropriate foundation had been established for these banking records, which it regarded as its own upon the purchase. I ask this court to consider the second district case of Ingray Wayland. Well, can they really just confidently talk about what they did with the records when they took them into their possession? I believe that Michael Hayes, in his affidavit, actually does talk about how they incorporated those documents and input them into their computer system. I think the foundation has been set that you just have to look through the language of the affidavit and you will see that. But they can only talk about their bank's customary usage and practice. Apparently there's no question raised by Mrs. Juncker that both Hayes and Sammons were fully capable of establishing the foundational elements of their own banking records. What Ms. Juncker is suggesting is that... What do they know about George Washington? What do they know about George Washington's records? What did Old Colony know about its inspector's manner of preparing its records or how those records were maintained? What's important is how Old Colony maintained those records within its organization. What's important here is for this court to understand how First Merit maintained and used the records that it obtained from a third party. Counsel, two minutes. Oh, I think I can go to conclusion unless there are questions. I do want... But we're still in the dark as to what George Washington... How they acquired records, how they kept them, and how they used them, right? The fact of the matter is that... Let's talk about the Wayland case. In Ray Wayland. This is a case involving a guardianship and a letter was offered at trial. So it's not an affidavit, it's not a summary judgment case. A letter was offered at trial and in the letter the banking official was talking about three accounts that were maintained at three different banks. Basically there were two successor banks and she was giving testimony as it related to two prior banks. So it's the same as here. There was no testimony being offered in the Ray Wayland case, which was Second District 2003. There was no testimony being offered there as to what the banking practices were of those two prior predecessor banks. What was important was how did this witness, how did this affiant find this information? How was it maintained within the organization that is offering that evidence? That only goes to the reliability of your bank. It doesn't go to anything to the reliability of George Washington. That's certainly the case. It doesn't go to that. But let's assume that a company is buying a copier. We'll use some of Ms. Yonker's attorney's testimony here. They're buying a copier and they buy this copier and it has maintenance records from the copy service. And those are maintained within the seller's record keeping. The buyer now owns this copier and finds out that there's a defect and they then proceed to file a claim against the manufacturer because of the defect. Let's assume it really did something bad. It actually injured someone and there's going to be a claim made about this copier and the defect that was within it. The manufacturer is going to defend and say, well, you didn't properly maintain it. The buyer of that copier is going to be utilizing the records from the seller, those records to show that proper maintenance had been kept and maintained and no one's going to challenge that. So in my view, it was the trial court's discretion to determine whether or not he felt that there was sufficient foundation laid for these records and he could decide whether or not there was going to be a sufficient weight for them. Obviously, you don't have to know how they were prepared if you were the custodian of the records. You don't have to even know anything about the entry of the information. You just have to know, you know, you don't have to have personal knowledge as to how they were prepared in order for you to be the person offering them. Thank you for your consideration. That's a great question. Thank you. Mr. or Ms. Yonker is arguing that the statute, the way that you're reading it, the rule the way that you're reading it, says one thing. The way that she's reading it says another. Why is our review of that question that he's raising not de novo? Statutory construction, of course, would be de novo. And there's absolutely no way I could ever dispute that. If you are looking at statutory construction, that would be de novo. Did the court interpret the statute improperly? I guess that could be de novo. But the fact is that there's plenty of precedent to support this interpretation. And this is not a novel case. And I would just leave it at that. And your point is whether the admissibility of evidence is reviewed under abuse of discretion. Yes. Yes, it is. Oh, you're a pleasure. Yes. Thank you. Thank you, Ms. Barron. Mr. Schramek, any rebuttal? Addressing the points raised in counsel's argument, first of all, with respect to the preparation of the amended answer of Katherine Juncker, that followed immediately after we kind of had to go through a long period of time to get a production request to get documents. Once we had the documents, we filed our amended answer immediately. And that amended answer specifically says, denies the allegations of Paragraph 9, specifically states that the note mortgage were for the construction of a single family residence with the plaintiff administering the construction payouts. The plaintiff made unauthorized distributions and knowingly permitted payments on forged signatures. That strikes me as something that is not brought on the eve, was not raised for the first time in the affidavit of Katherine Juncker. That was raised in the amended answer. And in terms of timeliness, right after we got the documents that were necessary to review, because apart from the legal issues in this case, Kaye Juncker is 79 at the time and obviously was taken advantage of by the son of a family friend. She wasn't sure at times of what she had signed because she was in a nursing home, rehab home, they were bringing her documents, some things she signed, some things she acknowledged she signed, some she did not. So in terms of the timeliness argument or the argument that this somehow came as a surprise at the time the affidavit was filed is not well founded. In terms of saying that the allegations of the complaint are not specific enough, a pleader in Illinois is obliged to plead ultimate facts. Not conclusions of law, not evidence. The pleading here seems to me to set forth ultimate facts. Plaintiff made unauthorized distributions and knowingly permitted payments upon forged signatures. I do not have to say that on September 15, 1959, Officer John Jones permitted an unauthorized distribution by virtue of signing check number 10. That's evidence. I plead ultimate facts. That's what I'm supposed to do. With regard to getting back to the other issue here, counsel talks about value, that somehow the number of records controls a determination of whether or not something may be deemed a business record. And I would submit that's not the criteria. The criteria is whether or not those records, be it one or be it 50,000, is something that occurs in the regular and ordinary course of business. And you can have businesses where there are multiple documents that come in because it is part of their business. Let me just say, which one of these records do you think, just from a common sense standpoint, wouldn't be kept in the ordinary course of a bank's business? Aren't these records all the type that are just ordinarily kept? The records of? The records that were in evidence in this case. I mean, the records that came in. Of George Washington? Yeah. Sure. But what's not, what's different here is you cannot say with a straight face that first merit is in the ordinary course of their business to acquire other banks. That's not part of their regular business. That is an extraordinary event that brings on board an entire and massive set of records from a different company. But this isn't a bank acquisition case. This is a case about a mortgage in the fall that was issued. The mortgage was issued to a bank that was later acquired by first merit. An acquisition case. We're not talking about the acquisition itself. We're talking about taking over the records. I buy your bank, and when I buy your bank, I'm taking your assets and your records too, which always happens, isn't it? Absolutely. But that doesn't address the issue of whether you can take those records and bring them in as a business record unless you meet the criteria. That's what I was wondering. I don't want to be long-winded, so thank you very much for your consideration. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and issue a written decision as quickly as possible.